The plaintiff introduced in evidence the will of John Barfield probated in 1849, under the fourth and fifth items of which he claimed the land in controversy. The fourth item of said will is as follows: "I leave to my wife, during her natural life, the home plantation, and I hereby request her to relinquish her life-estate in forty acres of land which she has, as will appear by reference to a deed made by me to my son Solomon Barfield, in lieu of that to have her life-estate in my (231) home place." And the fifth item of said will is as follows: "After the death of my wife I give, devise and bequeath to my son Solomon Barfield, to him and his heirs forever, all my lands lying *Page 169 
on Buck Swamp, in the county of Wayne; my son Solomon, however, is, before he takes possession of the home plantation (where his mother will reside during her lifetime), required to give or to secure to my two youngest daughters, Ally A. and Mary, three hundred and fifty dollars apiece, and in case he fails to pay or secure the payment to them of the above-mentioned sums, three hundred and fifty dollars to each of them, then and in that case, the home plantation to be sold, they each to receive the share due to them, and the balance of the money to go to Solomon and his heirs."
It was admitted that the land in controversy and described in the complaint is the same as the home plantation spoken of in said will; that John Barfield died on 20 October, 1848, and that Nancy Barfield, his widow, qualified as his executrix May, 1849; that Nancy Barfield, his widow, died on 16 August, 1889; that the defendants, Ally A. Barfield and Mary R. Barfield (now wife of the defendant D. A. Cogdell), are children of John and Nancy Barfield, and are the persons named as devisees in said will; that defendants are in possession of said land, and were in possession when this action was begun, and refuse to surrender the same; that said defendants have been in possession of said land since the death of Nancy Barfield, and were in possession at and before her death; that on 27 February, 1892, a notice was delivered to the defendants, of which the following is a copy:
"To Ally A. Barfield and Mary R. Cogdell:
"The will of our father, John Barfield, leaves the home plantation, on which he lived, on Buck and Thunder Swamps, in Wayne County, to me after the death of our mother, Nancy Barfield, now dead, and I now demand possession of the same, and I will now pay you each the sum of $350, as provided in said will, if you elect to (232) surrender the possession of said land to me without litigation. Let me know if you will do so by 15 March, 1892; otherwise I shall assume that you refuse to deliver possession on the condition above stated.
 "This 27 February, 1892. "SOL. J. BARFIELD. "Witness: DANIEL KORNEGAY."
And that no other offer to pay or secure said sums of $350 each has been made, and no money has been tendered, except as shown in said notice, or paid into court by the plaintiff.
Evidence was introduced by plaintiff to show the rental value of the land since 1889. The defendants put in evidence the following receipt: "Received of Mrs. Nancy Barfield, $75, being the amount bid by her *Page 170 
for the tract of land on which John Barfield lived, on the north side of Thunder swamp, and on the south side of Falling Creek, joining the lands of George L. Kornegay, James Manly and others, sold by me by virtue of a writ of venditioni exponas issued from the Superior Court of Johnston County to satisfy a judgment recovered by the State of North Carolina, and returnable to the Fall Term, 1853, of said Court. Said land being sold by me at public auction, this 15 August, 1853." (Signed by the sheriff); and also a writing signed by said sheriff (O. Coor), dated in 1869, and purporting to be a deed made by him to Nancy Barfield, and corresponding to this receipt. This writing was not under seal. They also put in evidence a deed from Nancy Barfield to them, dated in 1881, and introduced evidence to show that they had rented out the land since her death, and had received the income therefrom. There was evidence tending to show that the femes defendant had removed two houses from the land, and their value.
One of the plaintiff's witnesses testified that he paid to Nancy (233) Barfield, executrix of the will of John Barfield, $600, between 1850 and 1855. This was objected to. The objection was overruled, and the defendants excepted. The following issues were submitted to the jury:
"1. Is the plaintiff the owner and entitled to the possession of the land described in the complaint, subject to the defendants' lien, under the will of John Barfield, as alleged in the complaint?
"2. Are defendants in possession thereof?
"3. What is the annual value for rents and profits?
"4. What damages other than rents is plaintiff entitled to recover, if any?"
His Honor instructed the jury that if they believed the evidence, the plaintiff was the owner and entitled to the possession of the land, and they should answer the first issue, "Yes." The defendants excepted as follows:
1. For that the plaintiff deduced his title from the fifth item of the will of John Barfield, and by said item a condition precedent was attached before the plaintiff could take possession of the land, to wit, the payment or security of $350 each to Ally and Mary Barfield, and it did not appear that the condition had been performed. That the offer of 27 February, 1892, did not fulfill the condition, for the reason, first, that the plaintiff did not make an actual tender of money; second, that he did not tender interest from the death of the life-tenant; and third, that he did not pay into court the amount admitted to be due the defendants.
2. For that the defendants had shown title to the land in controversy. There was a verdict for the plaintiff. *Page 171 
His Honor stated the account between the parties, charging the plaintiff with interest on the sums due to the femes defendant ($350 each), from the day of the death of Nancy Barfield, the tenant for life, and charging the defendants with the rents from January 1, 1890, and also with the damages assessed by the jury on account of the removal of the houses. And having then determined what was due to (234) each of the femes defendant ($141.44), he then made the following order: "It is ordered and adjudged that plaintiff is the owner and entitled to recover possession of the property described in the complaint; that upon the payment to the clerk by the plaintiff for the use of Ally A. Barfield and Mary R. Cogdell of the above-mentioned sums of money, then he shall issue a writ of possession. In case said money is not paid with interest within ninety days after 17 April, 1893, it is adjudged that the land be sold for cash, after advertisement, by the clerk to the highest bidder, at the courthouse in Wayne County, and in case of sale, that he report his proceedings to the next term of court, and that the proceeds be applied in payment of said liens in favor of defendants, hereinbefore adjudged, and remainder, if any, to plaintiff. Let costs be taxed against defendants, and execution issue after the expiration of said ninety days." The defendants excepted to the judgment rendered:
1. For that the plaintiff is allowed rents prior to 27 February, 1892, when he claims to have tendered payment to the defendants.
2. For that it was adjudged that plaintiff was the owner and entitled to the possession of the land in controversy.
The contention of the defendants, that Nancy Barfield acquired a title in fee to the land in dispute by virtue of a purchase of it by her at a sale made in 1853 by the sheriff of Wayne, has nothing to support it. They themselves showed that if it was sold at all (of which, in fact, there was no legal evidence), the sale was made under a writ of venditioni exponas issued several years after the death of John Barfield, and they made no proof whatever of the issuing (235) suing or serving of any scire facias against his heirs. The writ was null and void. Samuel v. Zachary, 26 N.C. 377. And every act done under it goes for nothing.
This disposes of the defendant's alleged title, and brings us to the consideration of the rights of the parties under the will of John Barfield.
By that will the title to the land, upon the death of the widow, was vested plainly in the plaintiff and his heirs. The title did not, in any *Page 172 
event, descend to all the heirs of John Barfield, nor did it, in any contingency, vest in the femes defendants, his daughters. The latter had, under that instrument, neither title nor right of possession. The land was simply charged with the payment of the sum of $350 to each of them. It was their privilege, according to the provision of the will, to prevent their brother from occupying the land and appropriating the rents to his own use till these sums were paid to them, and to that end they might have invoked the aid and protection of a court by proper proceedings to have the rent collected and reserved and the land sold, so that out of the fund so arising they might certainly have what the testator said they should have. Instead of pursuing this course, they chose to assert a title adverse to the plaintiff devisee, to rent out the land and appropriate the income to their own use; and when their pretended title fails, they insist that the rents accruing from the death of the life-tenant to the date of plaintiff's offer to pay the sums charged on the land for them, belonged to them, and that they are not accountable therefor to the plaintiff. His Honor properly decided that they should account for all the rents received by them. As we have said, they had no right to the possession, either as heirs-at-law or devisees. Had the testator put the title in them with a provision that it should vest in the plaintiff when he paid to each of them the sums named, the rents might have been theirs till the payment was made or there was a proper tender of payment. But this provision the testator did not see fit to make. (236) He willed that they should have a certain sum of money. This they will have received when the judgment is fully executed, with interest thereon from the day it was first incumbent on the plaintiff to pay it. It is difficult to see how they can, with any show of reason, claim more than this under their father's will.
The judgment, we think, in a very proper manner, provides for an adjustment and settlement of the conflicting claims of the parties.
The evidence in relation to the payment of money to the executrix of John Barfield's will was immaterial. Its admission, if erroneous, was harmless.
Affirmed. *Page 173